FAULKNER v. FAULKNER.   (No. 93–19.)

(Supreme Court, Appellate Division, Fourth Department.   May 6, 1914.)

1. DEEDS (§ 71*) — DEED FROM HUSBAND TO WIFE — VACATION — GROUNDS — DURESS.

Circumstances of extreme necessity and distress, though not accompanied by any restraint or duress, may be sufficient to set aside a deed from husband to wife.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 183–189; Dec. Dig. § 71.*]

2. HUSBAND AND WIFE (§ 47*)—DEED FROM HUSBAND TO WIFE—VACATION —GROUNDS—TRUST.

Plaintiff purchased certain real estate which was occupied by himself and defendant, his wife, and their infant child as a home until March, 1904, when defendant charged plaintiff with having burned the house and demanded a deed to the premises, threatening to leave plaintiff and take the child unless he gave it to her and promised to remain with him and perform her duties as a wife if he did so. He suggested that the title be held by them jointly, but this was not agreeable to her, whereupon he

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

deeded 'the property to her. They continued to live together until March 7, 1910, when defendant left plaintiff without provocation, associating with persons of bad character and frequenting places of evil repute. *Held*, that the conveyance was not voluntary in the sense that she became the absolute owner, but was rather in the nature of a trust, and that, on her betrayal of the confidence imposed in her, he was entitled to a reconveyance of the property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. §§ 232–241; Dec. Dig. § 47.*]

3. CANCELLATION OF INSTRUMENTS (§ 34*)—SUIT TO VACATE—LACHES.

Where a husband conveyed certain real property, to be occupied as a home, to his wife in April, 1904, under her agreement to continue to live with him as his wife, the intention being that the property should be used by them as before as their home, and they did live together until March, 1910, when she left him without cause and refused longer to fulfill her obligations as a wife and the conditions on which she received the property, the time when plaintiff could have sued to set aside the deed for the purpose of determining whether he was guilty of laches did not begin to run until defendant left plaintiff and repudiated her promise.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. §§ 49–54; Dec. Dig. § 34.*]

Robson and Foote, JJ., dissenting.

Appeal from Judgment on Report of Referee.

Action by Joel E. Faulkner against Eliza Faulkner. From a judgment for defendant, plaintiff appeals. Reversed, and new trial granted.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAMBERT, and MERRELL, JJ.

John Griffin, of Hornell, for appellant.
James A. Parsons, of Albany, for respondent.

KRUSE, P. J. The parties are husband and wife. The action is brought to set aside a deed given by the husband to the wife for a house and lot situate in the city of Hornell. The complaint was dismissed, and the plaintiff appeals.

The house and lot were purchased by the plaintiff in 1900, and the parties made the premises their home, with their infant child, until about March 20, 1904, when the house was partially destroyed by fire. On the day of the fire the defendant accused her husband of burning the house. She called him vile names, demanded a deed of the premises, and stated that she would leave him and take their child, unless he gave her a deed of the house and lot, and that if he gave her the deed she would remain with him, be a wife to him, rear the child, and they would always have a home. He suggested that the title be held by them jointly, but that would not satisfy her. She continued her threats until she obtained the deed.

The parties continued to live together until about March 7, 1910, when the defendant without just cause or provocation, as the referee finds, left the plaintiff and their child, associating with persons of bad character and frequenting places of evil repute.

The deed in question was made April 11, 1904, evidently while the plaintiff was laboring under great mental distress. On that day, be-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fore the deed was executed, defendant was very violent. She made her threats as before, tore her hair, assaulted her husband, broke furniture, and he yielded to her entreaty and demand and conveyed the premises to her, confiding in her and evidently expecting that she would live with him and hold the property as a home for them and their child. But she betrayed his confidence. She seems to have thought then, as she thinks now, that after getting the deed she could do with the property as she liked. After she left him he asked her what she was going to do about disposing of the property. She replied that she would do as she liked; that she would dispose of it; that she had got him now and he could get out. He asked her to give him half, but she refused. Afterward he saw her with the man whom he accused of breaking up his home. He asked his wife whether she was going with him or with the other man. She replied, with the other man, and they locked arms and went off together. The plaintiff followed, and an altercation took place; but it is sufficient to say that the husband was unable to persuade his wife to return to him or to give up the property. None of these things was denied by her upon the trial.

The defendant contends that the deed was voluntary and that the plaintiff is without legal redress, although she refused to live with him or rear the child, or hold the premises as a home.

[1] I think the circumstances of the obtaining of the title by the defendant and of her subsequent misconduct are so unconscionable as to justify the setting aside of the conveyance. It is not necessary that a strict case of duress should be made out to set aside this deed. Circumstances of extreme necessity and distress, although not accompanied by any direct restraint or duress, may justify the setting aside of the deed. Van Dyke v. Wood, 60 App. Div. 208, 214, 70 N Y. Supp. 324; Baird v. Baird, 145 N. Y. 659, 40 N. E. 222, 28 L. R. A. 375.

[2] I think the deed was not a voluntary conveyance in the sense that she became the absolute owner. It was rather in the nature of a trust. If she made the statements to her husband in bad faith, for the purpose of inducing him to convey the house and lot to her, with the fraudulent intent upon her part to simply continue to live with him as long as she liked and break up the home and family relation when she chose and keep the property as her own, as I think is evident from her conduct, she became a trustee ex maleficio, and, upon the betrayal of the confidence which the plaintiff had placed in her, he was entitled to a reconveyance of the property. Goldsmith v. Goldsmith, 145 N. Y. 313, 39 N. E. 1067; Grote v. Grote, 121 App. Div. 841, 106 N. Y. Supp. 986; and kindred cases. The same rule has been applied in other jurisdictions. Stahl v. Stahl, 214 Ill. 131, 73 N. E. 319, 68 L. R. A. 617, 105 Am. St. Rep. 101, 2 Ann. Cas. 774, and notes at page 777; 3 Pomeroy's Equity Jurisprudence (3d Ed.) §§ 1053, 1055, 1056.

[3] The plaintiff's failure to bring the action sooner than he did does not conclude him from maintaining it. He had a right to rely upon her statements and promises, and, so long as she was fulfilling her marital obligations and holding the property as their home, he was justified in believing that she had acted in good faith in obtaining the property. It was not until she left him and repudiated her promise

and refused to carry out the purpose for which the deed was made that her fraudulent purpose was disclosed.

I am of the opinion that judgment should be directed for the plaintiff; but, if a majority think a new trial should be awarded, I am willing to yield to that disposition of the case.

Judgment reversed, and new trial granted, with costs to the appellant to abide the event. All concur, except ROBSON and FOOTE, JJ., dissenting.