John L. Kinney, Appellant, *v.* John W. Kinney, et al., Respondents.

Contract — real property — action to set aside deed of farm from plaintiff to his nephew, made in consideration of the latter's promise to support and care for plaintiff during life — partial breach of such contract by nephew — duties and obligations of grantee — grantor entitled to lien upon premises.

This action was brought to set aside a deed of conveyance of a farm from the plaintiff to his nephew, the consideration of which was the latter's agreement, among other things, to properly support and care for the plaintiff during life, furnish him with spending money not to exceed one hundred and fifty dollars in any one year, and upon his death to pay his funeral expenses. The performance of these conditions was made a lien upon the premises. *Held,* that the grantee in such a conveyance is bound to furnish the support in accordance with the agreement, without any demand therefor, but where the grantee has made substantial provision for support, which has been accepted by the grantor, the absence of any complaint or demand may be considered in determining whether the grantee has substantially performed his obligation. *Held, further,* that upon the facts found, the nephew was in default as to a part of his agreement and the plaintiff, by reason thereof, is entitled to some relief, and that under its terms he is entitled to a lien upon the premises for a reasonable amount of clothing and spending money not exceeding that mentioned in the agreement, which the nephew has failed to furnish, and in addition thereto is entitled, in the exercise of the court's discretion, to have a proper amount fixed and determined for his board and lodging, clothing and spending money, based upon his expectancy of life, which sums shall also be a lien upon the premises.

*Kinney* v. *Kinney,* 162 App. Div. 936, reversed.

(Argued March 29, 1917; decided June 12, 1917.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 5, 1914, affirming a judgment in favor of defendants entered upon a dismissal of the complaint by the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*S. Wallace Dempsey* for appellant.   The failure of the plaintiff to perform for twelve years any of the things which he bound himself by his contract to do and his refusal upon request to do things which he was asked to do constituted a breach of the contract.   (*Davis* v. *Davis*, 81 Vt. 259; *Abbott* v. *Saunders*, 80 Vt. 179; *Dixon* v. *Milling*, 43 L. R. A. 917; *Glocke* v. *Glocke*, 89 N. W. Rep. 118; *Lewis* v. *Wilcox*, 108 N. W. Rep. 536.)   The failure of the defendants to perform gives plaintiff the right to have his lien fixed.   Refusal was not necessary, but refusal was established.   (*Storey-Beacher Lumber Co.* v. *Burnett*, 123 Pac. Rep. 66; *Thomas* v. *Thomas*, 24 Oreg. 251; *Taylor* v. *Mason*, 9 Wheat. 325; *Ebert* v. *Gildermeister*, 106 Minn. 83; *Davis* v. *Davis*, 81 Vt. 259; *Russell* v. *Robbins*, 139 A. S. R. 342; *Abbott* v. *Saunders*, 80 Vt. 179; *Stehle* v. *Stehle*, 39 App. Div. 440; *Matter of Hess*, 110 App. Div. 476.)   Demand was not necessary to entitle plaintiff to his support or to have his lien fixed for the amount of it, defendants having failed to furnish it. (*Barnes* v. *Barnes*, 9 Mackey, 479; *Bogie* v. *Bogie*, 41 Wis. 209; *Richter* v. *Richter*, 111 Ind. 456; *Patterson* v. *Patterson*, 81 Iowa, 626; *Dixon* v. *Milling*, 43 L. R. A. 916; *Pettee* v. *Case*, 2 Allen, 548.)   Plaintiff is not confined to foreclosure, but can claim, as well, rescission of the contract and to have the deed set aside.   (*Davis* v. *Davis*, 81 Vt. 259; *Anderson* v. *Gaines*, 156 Mo. 665; *Dixon* v. *Milling*, 43 L. R. A. 916.)   The failure of defendants to furnish plaintiff a home and to relieve him of business cares entitled the latter to rescind the contract and to have the deed set aside.   (*Davis* v. *Davis*, 81 Vt. 259; *Russell* v. *Robbins*, 139 A. S. R. 342; *Abbott* v. *Saunders*, 80 Vt. 179; *Dixon* v. *Milling*, 43 L. R. A. 917.)

*Irving W. Cole* for respondents.   The evidence amply supports the findings that there was no such breach of the condition upon which the conveyance was made as to

furnish grounds for the enforcement of the lien, or for any other relief. (*Spaulding* v. *Hallenbach*, 39 Barb. 79; 35 N. Y. 204; *Mott* v. *Richtmeyer*, 57 N. Y. 49; *Cunningham* v. *Parker*, 146 N. Y. 29; *Post* v. *Weil*, 115 N. Y. 361; *Graves* v. *Deterling*. 120 N. Y. 447; *Lyon* v. *Hersey*. 103 N. Y. 264; *Freer* v. *Glenn Spring Sanitarium Co.*, 131 App. Div. 352; *Herrick* v. *Starkweather*, 54 Hun, 532; *Bohlerber* v. *Waelden*, 80 Hun, 349; *Wilson* v. *Deen*, 74 N. Y. 531.)

McLAUGHLIN, J.    This action was brought to set aside a deed of conveyance from the plaintiff to his nephew, the defendant John W. Kinney, the consideration of which was the latter's agreement to, among other things, properly support and care for the plaintiff during life, and upon his death to pay his funeral expenses.    There have been two trials.    The first resulted in a judgment setting aside the deed on the ground of the nephew's failure to perform the agreement.    On appeal the same was reversed as against the weight of evidence and a new trial ordered (152 App. Div. 901).    The second trial resulted in a judgment dismissing the complaint upon the merits, which, by a divided court, was affirmed, and the plaintiff appeals to this court.

There is no substantial dispute between the parties as to the material facts involved.    In 1883 the plaintiff, a veteran of the Civil War, purchased a small farm in Niagara county, N. Y., and thereafter, with his wife, lived upon it until her death, which occurred in May, 1899.    They had no children, and the plaintiff, who was then sixty-two years of age, was greatly affected and much depressed by her death.    Subsequently, the defendants, who resided in a home of their own in Buffalo, N. Y., went to live with and care for the plaintiff on his farm and they there remained several months.    During that time the relations between the parties were very close, and the plaintiff being apparently so well satisfied with

the arrangement, suggested that if his nephew would let him live with them, support him for the rest of his life, give him proper clothing, a certain amount of spending money, and provide a proper burial at death, he would give the farm and personal property thereon to him. When the matter was first suggested the nephew was unwilling to enter into such an arrangement. The farm was worth not more than $5,400, and was subject to a mortgage of $1,500. He was employed at the time as a fireman, earning $85 a month. The proposed arrangement, therefore, seemed of doubtful financial advantage to him. However, he finally consented to it and on September 13, 1899, they went to an attorney who prepared a deed of the farm, a bill of sale of the personal property thereon, worth from seven to eight hundred dollars, and an agreement by which, in consideration of the conveyance and transfer, the nephew assumed the payment of the mortgage, agreed to pay the taxes thereafter assessed on the farm, keep the buildings and fences in good repair during plaintiff's life, and also agreed "that he will board and lodge said party of the first part during his lifetime in his family, upon said premises or elsewhere if his family shall not live thereon, and that he will clothe said first party during his lifetime according to his habit of living and will furnish said party spending money from time to time as he shall require it during his lifetime, but not to exceed in any one year the sum of one hundred dollars; and that in case of sickness of said party of the first part he will pay the necessary expenses of his sickness and at his death will pay his funeral expenses." To insure the faithful performance of its covenants, the agreement on the part of the nephew was made a lien upon the premises, the deed reciting "the performance of which is made a lien and charge on the said premises." Immediately following the execution of the instruments, the defendant and his wife moved their effects from their home in Buffalo to the plaintiff's farm, where they all

lived together until the following spring, when it seemed best to all of the parties to let the farm on shares and remove therefrom to Buffalo.   The personal property upon the farm was thereupon sold, with the consent and active co-operation of the plaintiff, and in May or June of that year they went to Buffalo and took up their residence in the nephew's home.

As to what subsequently took place between them, the findings are somewhat conflicting, and the appellant is entitled to the benefit of those most favorable to him. (*Whalen* v. *Stuart*, 194 N. Y. 495.)   The material facts, however, are clearly set forth, from which it appears that the plaintiff remained with his nephew in Buffalo only a few weeks, when he returned to the farm, and at the request of the nephew, attended to its management. Since that time the farm has continued to be let on shares and the plaintiff, except for a short time between 1907, when he married a second time, and 1909, has continued to live on the farm and manage the same, accounting to his nephew for the proceeds, or the greater part thereof. Prior to the commencement of this action (1910) he had applied practically all of the income from the farm to the payment of the taxes and insurance thereon, and had paid and satisfied in full the principal and interest of the mortgage referred to.   While he occasionally visited the defendants, he did not board or lodge with them except for an aggregate of about seventeen weeks during the ten years the agreement had been in force.   Meanwhile, the nephew furnished him with only one suit of clothes costing $16, and gave him spending money only to the amount of $20.   He has never gone to the plaintiff and offered him spending money, or inquired whether he needed clothing, and on several occasions when plaintiff asked for spending money he put him off with excuses until plaintiff gave up asking for it.

Not only this, but the court found as a fact that the plaintiff "did not always receive kind and con-

siderate treatment from the defendant John W. Kinney and his family" on his visits to them, and that his relations with his nephew "have become strained to the point that they do not speak, either of them to the other, so that John W. Kinney himself believes that plaintiff could not now be made reasonably comfortable and happy boarding and lodging in the family of John W. Kinney."

It is obvious from these facts and others found that the purpose of the conveyance and agreement has not been, and cannot now be carried out. The parties undoubtedly expected, when the agreement was made, to live together on the farm for the rest of plaintiff's life, the nephew assuming the burden of running it. This is evident from the fact that the nephew moved from Buffalo to the farm immediately after the instruments were executed, though he did not give up his work as a fireman, which occupied approximately one-half of his time. While the nephew was not bound, under the agreement, to remain on the farm, it is quite apparent that the plaintiff was not a welcome inmate of his house after he moved back to Buffalo, and aside from the plaintiff's remarriage, their relations now are such that it is not practicable or desirable for the plaintiff to board and lodge with defendants' family. The plaintiff, instead of having a home provided for his declining years, as was contemplated when the conveyance and agreement were executed, has managed the farm just as he would have done had he not given it to his nephew; and while the latter has advanced something over $570 for the farm and to the plaintiff, the proceeds derived from the farm and sale of the personal property have more than repaid him, so that, as the court found, the conveyance of the farm and the transfer of the personal property have been to the financial advantage of the nephew.

Clearly, the plaintiff has not received the consideration to which the agreement entitled him. He conveyed his

farm and everything that he owned in order to insure himself a home in defendants' family and clothes and spending money for the rest of his life, and he has, for practically the entire time since the agreement was made, remained on the farm alone, apparently dependent upon his pension as a veteran for his clothes and spending money. Like most agreements of this kind, the contemplated arrangement has not worked out satisfactorily to any of the parties, and it remains for the court to consider to what, if any, relief, under the circumstances, the plaintiff is entitled.

It is urged, in the first place, on the part of the respondents, that no default on the part of the nephew has been shown, since it does not appear that the plaintiff ever made any specific demand for different treatment. This, apparently, was the ground upon which the first judgment in plaintiff's favor was reversed, the court holding: "(1) That the finding of the trial court that the appellant abandoned the contract was contrary to and against the weight of the evidence; (2) that there was no such refusal of performance on the part of the appellant as to entitle the plaintiff to rescind the contract and set aside the deed of the farm." (152 App. Div. 901.)

The conclusion thus reached, in so far as it relates to the nephew's obligation to board and lodge the plaintiff, is undoubtedly correct, since the plaintiff left defendants' family voluntarily and apparently was willing to go back to the farm, and from the income derived therefrom the nephew has allowed him his board and lodging. While this was not in accordance with the agreement, nevertheless it was, by mutual arrangement, a substantial substitute for the same, and, in the absence of any complaint or demand on the part of the plaintiff, it may be considered as showing that he was satisfied. (*Calhoun* v. *Calhoun*, 49 App. Div. 520.) There are, however, authorities that in cases of this kind the grantee is bound to perform the agreement which is the consideration for the

deed, and that no demand is necessary to put him in default. (*Stehle* v. *Stehle,* 39 App. Div. 440; *Richter* v. *Richter,* 111 Ind. 456; *Bogie* v. *Bogie,* 41 Wis. 209; *Barnes* v. *Barnes,* 20 D. C. [9 Mackey] 479.)

In *Stehle* v. *Stehle* (*supra*), upon facts somewhat similar to those here presented, the trial court dismissed the complaint upon the ground that no demand for support had been shown, but the judgment was reversed on the ground that it was the defendant's duty to furnish support as the consideration for the deed, without any demand.

In *Calhoun* v. *Calhoun* (*supra*) a judgment in favor of the plaintiff was reversed on the ground that substantial provision for support had been made and no demand for other or additional support had been shown.

But the distinction between these two cases, and it seems to me the true rule, is that the grantee in such a conveyance is bound to furnish the support in accordance with the agreement, without any demand therefor, but that where the grantee has made substantial provision for support, which has been accepted by the grantor, the absence of any complaint or demand may be considered in determining whether the grantee has substantially performed his obligation.

In the present case it appears that the grantee has complied with his obligation to furnish board and lodging, not in the manner provided in the agreement, but in a substantial way, which, so far as appears, was satisfactory to the plaintiff. But notwithstanding that fact it cannot be asserted with reason that the nephew has substantially complied with his agreement to furnish the plaintiff with proper clothing and spending money. As to the latter, specific demands were made from time to time, which, if not refused, were at least never complied with. The nephew, therefore, was in default as to a part of his agreement and the plaintiff, by reason thereof, is entitled to some relief.

In cases somewhat similar to this the courts have applied different rules as to the relief to be granted. (Pomeroy on Equitable Remedies, vol. 2, § 686; Black on Rescission and Cancellation of Contracts, § 168; *Dixon* v. *Milling*, 43 L. R. A. [N. S.] 916 and note.) No extended consideration of that question is necessary, however, because the agreement and deed both provided that the performance of the agreement should be a lien and charge upon the premises. The performance of the agreement was not made a condition of the deed as it might have been (*Spaulding* v. *Hallenbeck*, 35 N. Y. 204), and the express provision for a lien, as it seems to me, necessarily precludes the plaintiff from claiming the rescission of the contract and was obviously intended to specify the remedy for any breach of the agreement. It has been held that even without such specific provision, where the facts do not entitle the grantor to a reconveyance, a lien may, nevertheless, be declared and enforced against the premises. (*Redpath* v. *Redpath*, 75 App. Div. 95; *Grote* v. *Grote*, 121 App. Div. 841; *Stehle* v. *Stehle*, *supra*.)

Upon the facts found, therefore, I am of the opinion that the plaintiff is entitled to a lien upon the premises for a reasonable amount for clothing and spending money not exceeding that mentioned in the agreement, which the nephew has failed to furnish. Since it clearly appears that the relations between the parties are such that the agreement is no longer capable of being specifically performed, certain provisions should be made for the future. As was said in *Matthews* v. *Matthews* (133 N. Y. 679, 682), " When we recall the peculiar character of this contract, which contemplated a living together in home relations of the parties, a residence under one roof, a daily meeting at one table, and the continual association of personal care on one side and benefits bestowed on the other, it becomes apparent that a decree of specific performance possible of execution would have perpetuated and intensified an amount of strife and discord likely to end in violence and

utterly destructive of the real and beneficial purposes of the contract. The discretion of a court of equity would hardly be exercised to chain together the belligerents and call it making a home." Since the agreement under consideration can no longer be specifically performed and has been broken at least in part by the nephew, I think the plaintiff is entitled, in the exercise of the court's discretion, to have a proper amount fixed and determined for his board and lodging, clothing, and spending money, based upon his expectancy of life, and to have such amount declared to be a lien upon the premises, in addition to the amounts before suggested. I know of no other way in which the controversy between these parties can be satisfactorily settled.

Since there must be a new trial it may not be out of place to indicate, if the facts then established are the same as those presented on the present appeal, the judgment to be entered. It should determine and declare the amount of the lien and direct its enforcement by a sale of the premises, with a personal judgment against the nephew, John W. Kinney, for any deficiency, but since the plaintiff has, in his complaint, demanded a rescission of the agreement and a reconveyance of the land, John W. Kinney should be given an opportunity, before such sale, to reconvey the premises to the plaintiff in full satisfaction of all liability of the said defendant to him under the agreement.

The judgment appealed from, therefore, should be reversed and a new trial ordered, with costs to the appellant to abide the event.

CHASE, HOGAN and ANDREWS, JJ., concur; HISCOCK, Ch. J., and CARDOZO, J., concur in voting to reverse the judgment, but are of the opinion that since there was no abandonment of the contract, the amount of the lien should be restricted to the sum now due for clothes and spending money; POUND, J., not sitting.

Judgment reversed, etc.