[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 20-14456

_____

JANE DOE,

Plaintiff-Appellant,

*versus*

JOHN ROE,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:17-cv-23333-JEM

_____

Before WILSON, ROSENBAUM, Circuit Judges, and COVINGTON,[*] District Judge.

COVINGTON, District Judge:

This appeal arises from an oral agreement to keep the identity of a child's father secret. The district court granted summary judgment on all claims under Florida law and alternatively held that the claims also failed under New York law. We disagree with the district court's conclusion that Florida law applies to this case. Nevertheless, we affirm because all the claims fail under New York law.

## I[1]

Jane Doe is the mother of a child — Child X — with John Roe, a wealthy married businessman. Child X was born in 2002, while both Doe and Roe were living in New York. Shortly after the birth, Roe allegedly promised that, in exchange for Doe's secrecy about Child X's paternity and her agreement to raise Child X alone, Roe would (1) pay Doe $1 million and (2) establish a trust for Child

---

[*] Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

[1] In reviewing an order on a motion for summary judgment, we present the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor as well. *Boigris v. EWC P&T, LLC*, 7 F.4th 1079, 1084 (11th Cir. 2021). Here, both parties moved for summary judgment, so we present the evidence in the light most favorable to Doe, the party who lost in the district court. Therefore, the "facts" as we describe them may or may not be the actual facts.

X. The trust's principal would be paid to Child X when she was 27; prior to that, the trust would yield $20,000 a month. Although he reiterated his promises multiple times over the ensuing years, Roe never paid the $1 million to Doe or established a trust for Child X.

Doe brought this action in 2017 and asserted claims for breach of contract, fraud, fraud in the inducement, promissory estoppel, and unjust enrichment. At summary judgment, Doe argued that New York law applied to her claims because the alleged agreement, promises, and misrepresentations that form the basis of her claims occurred in New York. Roe, who was living in Florida at the time of the case's filing, maintained that Florida law applied.

The district court granted summary judgment in favor of Roe. Applying Florida law, the district court held that the Statute of Frauds barred the claims for fraud in the inducement, fraud, promissory estoppel, and breach of contract. The district court also held that the unjust enrichment claim failed because Doe had revealed Roe's identity to numerous individuals, including her lawyers, a therapist, and a friend. Thus, the district court reasoned, Doe had not conferred a benefit on Roe.

Alternatively, the district court held that Doe's claims would fail even if New York law applied. Specifically, the district court found that New York's Statute of Frauds barred the claims for breach of contract, promissory estoppel, and unjust enrichment because the oral promises could not be performed within one year. The fraud and fraud in the inducement claims failed, according to the district court, because the assertions that Roe made promises

to Doe that he never intended to keep were insufficient to support such claims.

This appeal followed.

## II

We review summary judgment rulings *de novo*. *Yarbrough v. Decatur Hous. Auth.*, 941 F.3d 1022, 1026 (11th Cir. 2019). We also "review choice of law questions *de novo*." *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1162 (11th Cir. 2009). Similarly, we review *de novo* the applicability of the Statute of Frauds. *See Hemispherx Biopharma, Inc. v. Mid-S. Cap., Inc.*, 690 F.3d 1216, 1224 (11th Cir. 2012) (reviewing *de novo* the district court's grant of judgment on the pleadings on the basis of Georgia's Statute of Frauds).

"Additionally, we may affirm on any ground that finds support in the record." *Long v. Comm'r of IRS*, 772 F.3d 670, 675 (11th Cir. 2014) (per curiam).

## III

### A.        Conflict of Laws

The first issue is whether Florida or New York law applies.[2] We conclude that New York law governs all of Doe's claims.

---

[2] Doe has not waived the argument that New York law applies to her claims. Although Doe first asserted the applicability of New York law in her response to Roe's motion for summary judgment, she sufficiently briefed the issue. Indeed, the district court understood the argument about New York law as

"A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." *Grupo Televisa, S.A. v. Telemundo Commc'ns Grp., Inc.*, 485 F.3d 1233, 1240 (11th Cir. 2007) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Florida courts "apply different choice of law rules to different areas of the law." *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006). "Florida utilizes the 'most significant relationship' test to determine which state's law[] applies to tort claims." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1301 (11th Cir. 2003). But "in determining which state's law applies to contracts, [Florida courts] have long adhered to the rule of *lex loci contractus*." *State Farm Mut. Auto. Ins. Co.*, 945 So. 2d at 1163.

### 1.   Lex Loci Contractus

"Pursuant to the *lex loci contractus* doctrine, the law applied to questions regarding validity and substantive obligations of a contract is the law of the state in which the contract is made." *Hendricks v. Smartvideo Techs., Inc.*, 511 F. Supp. 2d 1219, 1226 (M.D. Fla. 2007) (citations and internal quotation marks omitted). "As specifically related to oral contracts, they are considered 'made' in the state in which the oral agreement was reached." *Id.* (citation omitted).

---

having been properly raised because it made alternate holdings on Doe's claims under New York law.

The *lex loci contractus* test applies to the promissory estoppel and unjust enrichment claims as well as the breach of contract claim. *See id.* ("[T]he agreement was reached, and thus made, in Georgia. . . . Hendricks bases his promissory estoppel and specific performance claims on the same factual basis as the contract claim. As such, the promissory estoppel and specific performance claims are governed by Georgia law.").

Under the *lex loci contractus* test, New York law applies to these three claims because the alleged oral contract was made in New York in 2002, when both Doe and Roe lived in New York. The fact that Roe allegedly reaffirmed the oral agreement at various times up to 2014, including while Doe was residing in California, does not change that the oral contract was originally entered in New York. Thus, New York law applies to the claims for promissory estoppel, unjust enrichment, and breach of contract.

### 2.  Most Significant Relationship

As tort claims, the fraud and fraud in the inducement claims are subject to the most significant relationship test. This test involves consideration of numerous factors to determine "the state with the most significant contacts in relation to the occurrence and to the parties with due regard for the policies underlying each of the competing state's pertinent laws." *Proprietors Ins. Co. v. Valsecchi*, 435 So. 2d 290, 294 (Fla. 3d DCA 1983).

The first step in the analysis is to "determine which sovereigns have interests in applying their laws to the present dispute."

*Judge v. Am. Motors Corp.*, 908 F.2d 1565, 1568 (11th Cir. 1990). Once the interested sovereigns have been identified, the court must consider whether there is a "true conflict" among the jurisdictions with an interest in a particular issue or merely a "false conflict." *Tune v. Philip Morris, Inc.*, 766 So. 2d 350, 352 (Fla. 2d DCA 2000). A "false conflict" exists when the laws of the interested jurisdictions are: "(1) the same, (2) different but would produce the same outcome under the facts of the case, or (3) when the policies of one state would be furthered by the application of its laws while the policy of the other state would not be advanced by the application of its laws." *Id.* In contrast, a true conflict exists when "two states have conflicting interests." *Id.*

"A comprehensive conflict-of-law analysis is only required if the case involves a true conflict." *Id.* If so, the court conducts a two-pronged inquiry regarding the factors listed in §§ 145 and 6 of the Restatement (Second) of Conflict of Laws. *Id.* at 353-54; *Proprietors Ins. Co.*, 435 So. 2d at 294.

Here, there is a false conflict of the third variety. "[T]his variety of false conflict is essentially a situation in which the 'significant relationships' should heavily, if not exclusively, favor one state. Thus, the more comprehensive Restatement analysis should always reach the same result as the quicker decision under a false conflict analysis." *Tune*, 766 So. 2d at 353.

The "significant relationships" heavily favor New York as to the fraud claims because it was the place of the alleged oral agreement and misrepresentations made in 2002 when both Doe and

Roe lived in New York. These misrepresentations resulted in Doe's alleged reliance to her detriment in New York. Additionally, Doe alleges that Roe reasserted his promises to pay over the years, with some of those promises being made while they were both still living in New York. According to Doe, Roe stopped reaffirming the promises in 2014 — years before Roe moved to Florida in 2017. Given that it was where the parties had their romantic relationship, entered into the alleged secret agreement, and lived for many years without Roe fulfilling his alleged promises, New York is the center of the parties' dispute and has the greatest interest in this case.

Thus, New York law applies to the fraud and fraud in the inducement claims.[3]

### B.                    Claims Subject to the Statute of Frauds

Recall that the district court held that Doe's claims for breach of contract, promissory estoppel, and unjust enrichment were barred by New York's Statute of Frauds. New York's Statute of Frauds provides:

> Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking: (1) By its terms is not to be

---

[3] Even if Florida did have a real interest in this matter, the fraud and fraud in the inducement claims would also fail under Florida law because the four-year statute of limitations has run. Fla. Stat. §§ 95.11(3)(j); 95.031(2)(a).

20–14456             Opinion of the Court                    9

> performed within one year from the making thereof
> or *the performance of which is not to be completed
> before the end of a lifetime.*

N.Y. Gen. Oblig. Law § 5-701(a)(1) (emphasis added).[4]

---

[4] While Doe argues that "hush agreements" are exempt from New York's Statute of Frauds, we are unpersuaded. The statute includes no language exempting such agreements; rather, the statute applies to "[e]very agreement, promise or undertaking." N.Y. Gen. Oblig. Law § 5-701(a)(1). Additionally, none of the cases cited by Doe hold that the Statute of Frauds does not apply to oral contracts like the one at issue here. The one case involving a "hush agreement" does not discuss the Statute of Frauds, while the other two cases involve application of the Statute of Frauds to oral agreements concerning real property transfers — not oral agreements to maintain secrecy. *See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 573 (2d Cir. 1991) (not discussing the Statute of Frauds at all, but merely stating that "forbearance to assert a valid claim, if bargained for, is sufficient consideration to support a contract"); *Toobian v. Golzad*, No. 504238/15, 2018 WL 437508, at *1-2 (N.Y. Sup. Ct. Jan. 16, 2018) (in case involving oral agreement about transfer of real property, stating that "enforcement of the alleged oral agreement [would be] barred by the statute of frauds . . ., [except that] the plaintiff raised triable issues of fact as to whether he partially performed" as to the declaratory judgment claims but stating, as to the unjust enrichment claim and other claims, "that the statute of frauds does not preclude 'the recognition of a constructive trust affecting an interest in land where a confidential relationship would be abused if there were repudiation, without redress, of trust orally declared'" (citation omitted)); *Jahss v. Lichterman*, 95 N.Y.S.2d 580, 583–84 (N.Y. Sup. Ct. 1950) (finding that the Statute of Frauds did not apply to oral agreement that the plaintiff mother would transfer title to real property to the defendant daughter in exchange for the daughter's promise to support the mother for the rest of her life because of "the general rule that when a person, through the influence of a confidential relationship such as is here present, acquires title to real property or obtains an advantage which he cannot

The alleged oral contract here is subject to the Statute of Frauds because Doe's performance was not to be completed before the end of her lifetime. *See Dreher v. Levy*, 415 N.Y.S.2d 658, 659–60 (2d Dept. 1979) (per curiam) ("That statute [N.Y. Gen. Oblig. Law § 5-701] makes void and unenforceable any oral agreement which, in the absence of some written memorandum, may not be fully performed before the end of a lifetime. The agreement on which the defendants rely violates this requirement. By its terms, the agreement can be fully performed only after a partner's death."). Stated another way, Doe promised to keep the secret of Child X's paternity for the rest of her life and, thus, her performance of that promise would not be complete until her death. *See Yedvarb v. Yedvarb*, 655 N.Y.S.2d 84, 85 (2d Dept. 1997) ("It is apparent that the alleged oral promise [by the ex-husband defendant to 'always take care' of the ex-wife plaintiff], by its terms, was not capable of performance before the end of the plaintiff's lifetime, and therefore, her claim is barred by the Statute of Frauds.").

Additionally, although New York law provides a partial performance exception to the Statute of Frauds, *Anostario v. Vicinanzo,* 59 N.Y.2d 662, 664 (N.Y. 1983), that exception does not apply here. *See Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc.*, 92 F.3d 1110, 1121 (11th Cir. 1996) (collecting and

conscientiously retain, the court, to prevent the abuse of confidence may grant relief").

quoting New York cases for the proposition that "part performance may be asserted only to overcome the defense of Statute of Frauds in an action for specific performance of the contract, and may not be raised, as here, in an action to recover damages." (further citation omitted)).

Plus, a person cannot partially perform a promise to reveal a secret to no one. By revealing the secret to even a limited group of people, the promise has been broken. Here, Doe told numerous individuals that Roe was Child X's father. We assume without deciding that Doe's divulgence of Roe's identity to her attorneys and therapist did not constitute a breach of the promise. But it is undisputed that Doe told a third party — her friend Jeremy Wren — before this case was filed. Thus, the partial performance exception does not apply.

Likewise, application of the Statute of Frauds to Doe's promissory estoppel claim would not be unconscionable. Again, Doe divulged the secret. Roe also has provided $10,000 per month in child support throughout Child X's life, even though he has not established a trust for her. *See Four Star Cap. Corp. v. Nynex Corp.*, 183 F.R.D. 91, 103 (S.D.N.Y. 1997) ("The doctrine of promissory estoppel provides that 'a promise which the promisor should reasonably expect to induce action or forbearance [] is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise.' Under New York law, however, this doctrine is confined to cases where application of the

Statute of Frauds would produce an unconscionable result." (citations omitted)).

Finally, because the unjust enrichment claim seeks the same relief as the breach of contract claim, the unjust enrichment claim is also barred by the Statute of Frauds.[5] *See id.* at 108 ("A party may not circumvent the Statute of Frauds by repleading an already barred breach of contract claim as a claim for unjust enrichment."); *Komolov v. Segal*, 985 N.Y.S.2d 411 (1st Dept. 2014) (mem.) ("The thirteenth cause of action for unjust enrichment is precluded in this case because it seeks precisely the same relief that was barred by the statute of frauds.").

In short, the breach of contract, promissory estoppel, and unjust enrichment claims are barred by the Statute of Frauds.

---

[5] We assume without deciding that Florida's choice-of-law rules would treat Doe's unjust-enrichment claim the same as her breach-of-contract claim with respect to which forum's substantive law applied. We think it a sensible assumption, at least in this context, where Doe's unjust-enrichment claim is based on the same underlying allegations as her breach-of-contract claim. Still, we note there is some support for the notion that Florida's choice-of-law rules would treat them differently. *See* Fla. Stat. § 95.11(2)(b) (providing for five-year limitations period for breach-of-contract claims), *and* Fla Stat. § 95.11(3)(p) (providing for four-year limitations period for unjust-enrichment claims). But we need not decide this issue because even if Florida's choice-of-law rules did apply the most-significant-relationship test to Doe's claim for unjust enrichment, that test would direct the court to apply New York's substantive law.

C.                    Fraud and Fraud in the Inducement

Finally, the district court correctly concluded that the fraud and fraud in the inducement claims failed under New York law.

"'[A]s a general matter, a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract.' Thus, 'general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim.'" *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006) (quoting *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 318 (1995)); *see also Four Star Cap. Corp.*, 183 F.R.D. at 109 ("Under New York law, a claim for common law fraud will not lie if that claim is duplicative of a claim for breach of contract."). "One reason for this rule is to prevent parties from avoiding the Statute of Frauds by recharacterizing their contract claims as torts." *Wall*, 471 F.3d at 416.

While "New York law specifically recognizes causes of action for fraud in the inducement when the misrepresentation is collateral to the contract it induced," *id.*, here the misrepresentations made by Roe are not collateral to the contract. Rather, the misrepresentations — falsely promising to establish a trust for Child X and to give Doe $1 million in exchange for Doe's secrecy, as well as reaffirming these promises over the years — are the subject of the alleged contract. To the extent Doe also asserts that Roe threatened or discouraged her from hiring an attorney or initiating court proceedings, these are not misrepresentations of fact that would support a fraud claim. *See Eurycleia Partners, LP v. Seward &*

*Kissel, LLP*, 12 N.Y.3d 553, 559 (2009) ("The elements of a cause of action for fraud require *a material misrepresentation of a fact*, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages." (emphasis added)). Thus, the fraud and fraud in the inducement claims fail.

## IV

For the reasons stated and having the benefit of oral argument, we conclude that the district court did not err in granting summary judgment in Roe's favor on all claims and, therefore, we affirm the district court.[6]

**AFFIRMED.**

---

[6] Days before oral argument, Roe filed a motion to supplement the record with additional district court documents. The referenced documents could have been included in Roe's supplemental appendix, which he filed within seven days of filing his brief as required by 11th Cir. R. 30-1(b) & (c). Because Roe's request is untimely and the supplementation would not aid in the resolution of this appeal, the motion is denied.